IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES MELLOWITZ, | ) |
| | ) Case No. 1:25-cv-128 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SELECTIVE INSURANCE COMPANY | ) |
| OF SOUTH CAROLINA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the plaintiff, JAMES MELLOWITZ, by and through his attorneys, SMITHMARCO, P.C., and for his Complaint against the defendant, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. JAMES MELLOWITZ, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Indianapolis, County of Marion, State of Indiana.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, (hereinafter, "Defendant") is a business entity engaged in providing insurance products to various businesses within the State of Indiana. Defendant is incorporated in the State of Indiana.

7. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

### IV. ALLEGATIONS

8. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

9. Plaintiff does not currently have an account or loan open with Defendant.

10. Plaintiff has not historically had an account or loan open with Defendant.

11. Plaintiff does not currently owe any debt to Defendant.

12. Plaintiff has not historically owed any debt to Defendant.

13. Plaintiff does not currently have any personal business relationship with Defendant.

14. Plaintiff has not historically had any personal business relationship with Defendant

15. As of on or about July 7, 2023, Plaintiff did not have an account or loan open with Defendant.

16. As of on or about July 7, 2023, Plaintiff did not owe any debt to Defendant.

17. As of on or about July 7, 2023, Plaintiff did not have any personal business relationship with Defendant.

18. As of on or about July 7, 2023, Plaintiff did not submit an application for financing to Defendant.

19. Given the facts delineated above, Defendant had no information in its possession to suggest that Plaintiff had engaged in any business activity with Defendant.

20. Given the facts delineated above, Defendant had no information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

21. Given the facts delineated above, Defendant had no information in its possession to suggest that Plaintiff was trying to obtain credit from Defendant.

22. Plaintiff is an attorney licensed in the state of Indiana.

23. During the period including July 7, 2023, Plaintiff represented an injured client in a lawsuit against a business entity that was insured by Defendant.

24. During the period including July 7, 2023, Plaintiff was attempting to negotiate a resolution on behalf of his client with Defendant.

25. Given the facts delineated above, Defendant had no reason to believe it had any permissible purpose to review Plaintiff's credit report or any part of Plaintiff's credit file.

26. Equifax Information Services, LLC (hereinafter, "Equifax") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Equifax is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

27. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records

of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

28. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only.  See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

29. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

30. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

31. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**.  To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

32. Defendant is a subscriber and user of consumer reports issued by Equifax.

33. On or about July 7, 2023, despite being cognizant of the facts as delineated above, Defendant procured from Equifax a copy of Plaintiff's consumer report at which time, Defendant

made a general or specific certification to Equifax that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA. (See attached hereto as **Exhibit A**.)

34. The certification made by Defendant to Equifax was false.

35. Despite certifying to Equifax that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

36. At no time on or prior to July 7, 2023 did Plaintiff consent to Defendant obtaining his consumer report.

37. On or about July 7, 2023, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report.

38. On or about July 7, 2023, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

39. On or about July 7, 2023, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

40. On or about July 7, 2023, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

41. On or about July 7, 2023, at the time Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

42. Plaintiff has a right to have his Confidential Information kept private.

43. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides his consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

44. Defendant procured from Equifax Plaintiff's consumer report without his knowledge or consent.

45. Defendant procured from Equifax Plaintiff's consumer report without a permissible purpose.

46. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant knew that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

47. Given the facts delineated above, at or around the time that Defendant procured Plaintiff's consumer report, Defendant should have known that it lacked a permissible purpose to procure Plaintiff's consumer report from a consumer reporting agency but proceeded to do so anyway.

48. By its actions, when Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

49. By its actions, when Defendant impermissibly procured from Equifax Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

50. When Plaintiff discovered that Defendant had procured his personal, private and confidential information from Equifax, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of his privacy.

51. When Plaintiff discovered that Defendant had procured his personal, private and confidential information from Equifax, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of his personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

52. When Plaintiff discovered that Defendant had procured his Confidential Information from Equifax, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

53. When Plaintiff discovered that Defendant had procured his Confidential Information without a permissible purpose, Plaintiff believed that Defendant would continue to act with impunity and continue to procure his Confidential Information indefinitely.

54. The actions of Defendant caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite; (iii) Plaintiff's ability to focus at work for a period of time.

## V.   JURY DEMAND

55. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JAMES MELLOWITZ, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

   a. All actual compensatory damages suffered;

      b.      Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

      c.      Punitive damages;

      d.      Plaintiff's attorneys' fees and costs; and,

      e.      Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**JAMES MELLOWITZ**

By:   s/ David M. Marco
       Attorney for Plaintiff

Dated: January 20, 2025

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
5250 Old Orchard Rd., Suite 300
Skokie, IL 60077
Telephone:  (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:      dmarco@smithmarco.com